**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:11-cr-00012-14** |
| | ) | |
| **DEMETRIUS DUNCAN** | ) | **Senior Judge Wiseman** |

**ORDER**

Before the Court is defendant Demetrius Duncan's Motion to Suppress the Fruits of the Search of xxx Woody Hills Drive in Clarksville, Tennessee (ECF No. 861), filed along with a supporting Memorandum of Law (ECF No. 960). The government filed its response in opposition (ECF No. 991), and the defendant filed a reply brief (ECF No. 1027). Oral argument on the motion was conducted on Wednesday, July 11, 2012. Based on the parties' submissions and the arguments heard in open-court, for the reasons set forth herein, the motion is hereby **DENIED**.

## I. PROCEDURAL BACKGROUND

On December 9, 2010, a search warrant was issued by Magistrate Judge Cliff Knowles authorizing a search of Demetrius Duncan and his residence at 964 Woody Hills Drive in Clarksville, Tennessee. (ECF No. 408-1, at 59–64.) This warrant was issued based on a 185-page Affidavit submitted by Agent James R. Whitsett, a Task Force Officer for the United States Drug Enforcement Administration ("DEA"). (ECF No. 403, Affidavit.) Agent Whitsett specifically sought judicial authorization to search the person of Demetrius Duncan, his residence on Woody Hills Drive, and all vehicles at that premises which are connected to Duncan or the occupants of that residence. (Affidavit at 4, ¶ 15).

On December 11, 2010, Agent Whitsett, working with representatives of various government agencies, executed the search warrant at 964 Woody Hills Drive. The defendant objects to the use of any evidence obtained by the government as a result of this search on the basis that (1) the affidavit submitted in support of the search warrant did not provide adequate probable cause; (2) no nexus was created between the defendant's residence and alleged illegal activity; (3) the justification for searching the residence was stale; and (4) the search warrant was based on illegally intercepted phone

conversations.[1] The defendant further argues that the good-faith exception established by *United States v. Leon*, 468 U.S. 897 (1984), does not pertain in this case because Agent Whitsett's affidavit is "flagrantly insufficient" and "wholly conclusory as to Defendant Duncan," such that any reasonable law enforcement officer would have recognized that the search warrant was facially deficient. (ECF No. 960, at 11.)

The government refutes each of these arguments,[2] and further maintains based on *Davis v. United States*, --- U.S. ----, 131 S. Ct. 2419, 2426–26 (2011), that even if a constitutional violation occurred, suppression is not warranted because the "social cost of compromising a criminal case against a multi-convicted felon such as Duncan more than outweighs any deterrent value that would flow from suppression, especially in light of the lengthy investigation and the detailed affidavit in support of the search warrants in this case." (ECF No. 991, at 12.)

## II. THE WARRANT AND AFFIDAVIT

The lengthy affidavit prepared by Agent Whitsett was used to support the issuance of a number of warrants to search places, vehicles, and people, including many of the twenty-eight named defendants in this case, for evidence relating to drug trafficking, use of communications facilities in the commission of drug felonies, drug conspiracy, and maintaining or using a place for drug-related purposes, all in violation of various federal criminal statutes. (*See* Affidavit at 1–4 (listing fifteen individuals for whom search warrants were sought).) Thus, only a small part of the affidavit pertains to the search warrant contested by the present motion.

In his affidavit, Agent Whitsett states that the facts detailed therein are based on his first-hand knowledge obtained through the course of his investigation or learned from other law-enforcement sources during the investigation, and further states that not every fact known to Whitsett regarding the investigation is set forth in the affidavit. Agent Whitsett provides information regarding his background

[1] The wiretap authorizations for interception of phone conversations were the subject of separate motions to suppress, which this Court has already denied. This basis for suppression has therefore been mooted.

[2] The defendant initially argued that the government had insufficient evidence to associate Demetrius Duncan with 964 Woody Hills Drive. In response, the government argued that Duncan lacked standing to contest the search of that residence. In his reply brief (ECF No. 1027), the defendant conceded that he resided at 964 Woody Hills Drive. The government therefore acknowledged at the hearing that the defendant has standing to object to the search of the premises.

and experience, stating that at the time the affidavit was submitted he had been a Task Force Officer with the DEA for six years and had been in law enforcement for twenty years. According to the affidavit, Whitsett has during the course of his career written, executed, or assisted in the execution of hundreds of state and federal warrants for narcotics, records and documents related to drug trafficking, and proceeds obtained from illegal enterprises, testified in federal and state courts numerous times concerning all aspects of drug trafficking, and received extensive training in drug-trafficking investigations. (*Id.* at 5–6.) The affidavit sets forth several pages of information Whitsett has learned to be true regarding drug-trafficking enterprises and organization, including that drug traffickers often place assets derived from their criminal activities in the names of other persons or corporate entities; that drug traffickers typically maintain and have access to large amounts of cash in order to finance their on-going business; and that drug dealers frequently maintain books, records, and other documents relating to the operation of the drug-trafficking enterprise in a residence, vehicle or business maintained by themselves or their associates. (*Id.* at 6–8.)

Agent Whitsett also noted that he is aware that the Sixth Circuit Court of Appeals has upheld the search of drug traffickers' residences "even if there is no direct evidence that actual drug distribution or storage occurred at the residence, especially where continuing illegal activity has occurred." (*Id.* at 8 (citing *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) (collecting cases which hold that an "issuing judge may infer that a criminal suspect keeps the 'instrumentalities and fruits' of his crime in his residence")).)

The affidavit also provided details regarding the scope of the investigation underlying this case, which began in 2006 and led to the issuance of a series of wiretap orders in the fall of 2010 by Judge Campbell for telephones used by Robert Porter, Donnie Patterson, Brian Vance, and Gregory Brooks, all identified as persons involved in a conspiracy to distribute illegal narcotics.

The affidavit contains abundant information regarding other defendants and other residences, but relatively little information relating specifically to the residence at Woody Hills Drive and Demetrius Duncan, which is summarized as follows:

> (1) Demetrius Duncan contacted Brian Vance on August 7, 2010 to ask if he could buy a quarter ounce of crack cocaine from him.
>
> (2) Demetrius Duncan contacted Brian Vance on August 12, 2010 to ask to buy a

quarter-ounce of crack cocaine from him. During this conversation, Duncan asked Vance where Vance was, and informed Vance that he (Duncan) had "a play," which Agent Whitsett interpreted to mean that Duncan had a customer who wanted to purchase drugs from him. (Affidavit at 174.) Vance told Duncan he was "at that girl house," which Whitsett interpreted to mean that Vance was at a residence located on East Happy Hollow Road in Clarksville, Tennessee. (*Id.*) Duncan told Vance, "get me a quarter ready." (*Id.*) A few minutes later, officers conducting surveillance on East Happy Hollow Road observed a black van "known by Officers to be driven by Demetrius Duncan" backing out of the driveway of the residence on East Happy Hollow Road. (*Id.* at 175.)

(3) On August 22, 2010, Vance called Duncan, and Duncan informed Vance he "need[ed]" another quarter-ounce of crack cocaine, and Vance told him it was "on" and that Duncan was "gonna go get it." (*Id.* at 175, 176.)

(4) On September 1, 2010, Duncan called Vance and informed him he wanted to buy an ounce of crack ("[W]hat give me a whole for?"), to which Vance responded that he did not have that much available. (*Id.* at 176) Duncan asked if Vance had "a half," to which Vance responded in the affirmative. (*Id.*) Duncan then asked Vance, "[W]hat you want for it?" to which Vance responded that he "ha[d] to have 3." (*Id.*) Investigators interpreted this response to mean that Vance wanted $300 for a half-ounce of crack cocaine.

(5) On September 13, 2010, Robert Porter called Demetrius Duncan. During this conversation, Duncan stated, "[Y]ou wanna fuck with me, I got six hundreds," and "I need you to do what you said, you know what I'm talkin about? So whenever, so by then, shit, I, I, I, I should be right." (*Id.* at 177.) Investigators interpreted Duncan's statement to mean that he had $600, and he was asking Porter to front him some additional cocaine above the amount he was going to purchase for $600. In this regard, Whitsett stated in the affidavit, "Your Affiant is aware that cocaine traffickers often front cocaine to distributors and then receive payment after the cocaine is sold." (*Id.*)

(6) On October 29, 2010, Duncan called Vance. During this conversation, Duncan informed Vance that he had "some plays, I got about three plays." (*Id.* at 177.) Whitsett interprets this statement to mean that Demetrius Duncan had three crack cocaine customers waiting, and Duncan needed Vance to supply him with the crack cocaine. Vance told Duncan that he (Vance) had to go to an undisclosed location to pick up some crack cocaine. (*Id.* at 177–78.)

(7) On November 21, 2010, Vance called Duncan and said to him, "I left my strap over there." Duncan responded, "over at my house?" and Vance stated, "Hell yea." (*Id.* at 178.) Vance then told Duncan he would take Duncan's gun that night. Duncan objected: "Nah shit don't take mine then I'm I aint staying there without no gd pistol." (*Id.*) Whitsett states: "Your affiant believes this call shows that both Vance and Duncan are regularly armed with a firearm, that Vance left his firearm at Duncan's residence, and that Duncan generally has his firearm at that residence." (*Id.*)

(8) GPS tracking on Target Telephone 9 (one of the cell phones used by Vance) placed Vance at 964 Woody Hills Drive when he has stated in "intercepted calls" that he was at "Whirley's," which is a nickname used by Duncan. (*Id.* at 174.) Although the affidavit does not state when these intercepted calls occurred, the wiretap order for Target Telephone 9 was not issued until November 19, 2010, and that order included authorization for GPS tracking. (Case No. 3:10-sm-00092, ECF No. 74.) The affidavit includes information as to when the wiretaps on each of the "Target Telephones" began.

The affidavit concludes the section on Duncan by stating: "Based upon the preceding statement of facts as well as knowledge, training, and experience, your affiant believes that Demetrius Duncan

resides at 964 Woody Hills Drive, Clarksville, Tennessee and uses the residence to store cocaine, US Currency that is proceeds from the sale and or receipt of narcotics trafficking, and narcotics trafficking paraphernalia . . . , telephones, phone records, contact lists and firearms." (*Id.* at 179.)

Finally, the affidavit details Demetrius Duncan's criminal history, which includes a reckless endangerment and aggravated assault conviction in 2001, and state convictions for selling a Schedule II controlled substance in 2006 and 2007, for which he received probation. (*Id.* at 180.)

## III. ANALYSIS

### A. Standard of Review

Whether a search warrant affidavit establishes probable cause is a legal question that the court considering a motion to suppress considers *de novo*. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010); *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir.2005). However, in reviewing a magistrate's decision to issue a warrant, this Court must accord the magistrate's determination "great deference." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc). Further, in determining whether an affidavit submitted in support of a search warrant establishes the requisite probable cause, this Court must look only to the four corners of the affidavit. *Brooks*, 594 F.3d at 482.

To establish probable cause adequate to justify issuance of a search warrant, the governmental entity or agent seeking the warrant must submit to the magistrate an affidavit that establishes "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). Whether the affidavit gives rise to this fair probability "depends on the totality of the circumstances." *Frazier*, 423 F.3d at 531 (citing *Gates*, 462 U.S. at 230). "The probable cause standard is a 'practical, non-technical conception' that deals with the 'factual and practical considerations of everyday life.'" *Id.* (quoting *Gates*, 462 U.S. at 231).

When a warrant applicant seeks to search a specific location, the affidavit must establish "a nexus between the place to be searched and the evidence to be sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). "The critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *Frazier*, 423

F.3d at 532 (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)).

In addition, in seeking to establish probable cause to obtain a search warrant, the affidavit may not rely upon "stale" information; the question of whether information is stale depends on the "inherent nature of the crime." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (quoting *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988)). Thus, whether information is stale in the context of a search warrant turns on several factors, such as "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [and] the place to be searched (mere criminal forum of convenience or secure operational base?)." *United States v. Hammond*, 351 F.3d 765, 771–72 (6th Cir. 2003) (quoting *United States v. Greene*, 250 F.3d 471, 480–81 (6th Cir. 2001)). In the context of drug crimes, the Sixth Circuit has recognized that information may go stale very quickly "because drugs are usually sold and consumed in a prompt fashion." *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009); *see id*. ("Thus, the court must first focus on whether information that is sixteen-months old is stale. In the drug trade, the answer is usually yes."). However, where there is evidence that a suspect is engaged in an ongoing drug operation, the same presumption does not necessarily apply. *See id.* ("[I]nformation of an unknown and undetermined vintage relaying the location of mobile, easily concealed, readily consumable, and highly incriminating narcotics could quickly go stale *in the absence of information indicating an ongoing and continuing narcotics operation*." (emphasis added) (quoting *United States v. Kennedy*, 427 F.3d 1136, 1142 (8th Cir. 2005)).

**B. Probable Cause, Nexus and Staleness**

The defendant here argues that the affidavit in support of the search warrant failed to support the existence of a nexus between the place to be searched and the evidence to be sought, citing *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010). In particular, the defendant points out that the vast majority of Agent Whitsett's statements in the affidavit concern other persons rather than Demetrius Duncan, and no illegal activity is alleged to have been conducted at the residence on Woody Hills Drive. The government, for its part, construes the evidence in the affidavit as establishing that "Duncan routinely distributed cocaine, used a cell phone to communicate with both Vance and Porter, was regularly armed, and that he resided at 964 Woody Hills Drive." (ECF No. 991, at 7.) The government argues that a

sufficient nexus with the residence was established under Sixth Circuit precedent, as the Sixth Circuit has "repeatedly held that it is reasonable to search a drug dealer's residence for evidence of drug offenses." (*Id.* at 8 (citing *United States v. Williams*, 544 F.3d 683 (6th Cir. 2008)).)

The Court finds that the evidence in the affidavit was sufficient, first, to establish that Duncan resided at the residence on Woody Hills Drive, and second, to give rise to an inference that Duncan was involved in an "ongoing and continuing narcotics operation." *Frechette*, 583 F.3d at 378. The affidavit provided detailed information about telephone conversations between Duncan and either Vance or Porter, discussing six different drug purchases involving quantities ranging from a quarter-ounce to a full ounce of crack cocaine (and one involving an undisclosed quantity), which occurred over a two-month period from August 7 through October 29, 2010. The transactions at issue occurred frequently enough and involved quantities large enough to permit the inference that Duncan was not purchasing the crack only for his own consumption. The fact that Duncan told Vance on November 21 that he would not stay at his house without a pistol at hand further substantiates a conclusion that the house was used as a "secure operational base for an ongoing drug enterprise," *United States v. Hython*, 443 F.3d 480, 486 (6th Cir. 2006), and that evidence of firearms, as well as drug paraphernalia relating to drug sales, would likely be found at the location. The fact that GPS tracking put Vance in or near Duncan's residence at least once after November 19, when the wiretap of Target Telephone 9 was instituted is also an important factor. In addition, the affidavit also includes information concerning (1) Duncan's prior felony convictions (which made possession of a firearm illegal); (2) information that Duncan had previously been convicted of selling drugs; and (3) Agent Whitsett's knowledge and experience that led him to believe that drug dealers frequently keep items relating to the trade in their homes. Based on all these circumstances, considered in their totality, this Court finds that the Sixth Circuit's recognition that information regarding drug trafficking may go stale very quickly "because drugs are usually sold and consumed in a prompt fashion," *Frechette*, 583 F.3d at 378, does not invalidate the warrant at issue here.

The Sixth Circuit has repeatedly held that it is reasonable to infer that evidence of illegal activity will be stored at a drug traffickers' residence. For instance, in *United States v. Gunter*, 551 F.3d 472, 481 (6th Cir.), *cert. denied*, 130 S. Ct. 194 (2009), the defendant argued that the requisite nexus was missing because the search warrant affidavit mentioned his residence one time in passing, and did not connect

any illegal activity with the residence. The Sixth Circuit simply stated that this argument was "misguided" in light of evidence set forth in the affidavit showing that the defendant "was engaged in repeated purchases of cocaine in the one to four kilogram range. Because the quantity of drugs and the repeated nature of the transactions make it reasonable to conclude that Gunter was engaged in ongoing drug trafficking, it was reasonable to infer that evidence of illegal activity would be found at Gunter's residence." *Id.* at 481. In *United States v. Jones*, 159 F.3d 969, 974-75 (6th Cir. 1998), cited in *Gunter*, the court found probable cause to search a residence where a confidential informant had made at least six drug purchases from the defendant, all which were recorded by law enforcement officials and two of which took place right outside the defendant's residence. In addition, the confidential informant was on the premises within 72 hours preceding the affidavit in support of the search warrant, and had observed the defendant and a co-defendant in possession of a quantity of cocaine for the purpose of unlawful distribution. In *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008), the affidavit and the search warrant at issue did not tie any illegal activity to the defendant's residence, but the warrant nonetheless was held to show "'continuing and related illegal firearm activity,' from which the issuing judge could infer that evidence pertaining to the handguns would be found in Williams's residence." This evidence included statements from one arrestee on different gun charges, and a second arrestee who corroborated the statements of the first. The statements of both were, to the extent possible, corroborated by law enforcement officials. In addition, the warrant was executed within a couple of weeks after officers obtained the information that supported the warrant.

In the present case, the evidence supporting a conclusion that Duncan was a drug dealer is admittedly weaker than in *Jones* or *Gunter*. In Duncan's case, the last telephone conversation setting up a drug purchase occurred six weeks before the warrant was issued; the quantities purchased by Duncan were relatively small; and there is no actual evidence (other than Duncan's reference to "plays") that Duncan was actually selling the cocaine he purchased from Vance and Porter. Notwithstanding, the phone calls and purchases between Vance and Duncan occurred regularly over the course of more than two months, and the phone call in which Vance informed Duncan he wanted to borrow his gun, over Duncan's strenuous objection, took place just three weeks prior to issuance and execution of the warrant. Considering the "totality of the circumstances, particularly in the context of Vance's activities as detailed

throughout the affidavit, the Court finds that the evidence provided to Magistrate Judge Knowles in support of the search warrant for the residence at 964 Woody Hills Drive was sufficient to give rise to "a fair probability that contraband or evidence of a crime [would] be found in [that] particular place." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

### C. The Good-Faith Exception under *United States v. Leon*

Even if the Court were to conclude that the evidence in the affidavit was insufficiently compelling—or recent—to support the magistrate judge's conclusion that there was a fair probability that contraband or evidence of a crime will be found at 964 Woody Hills Drive, the Court would nonetheless determine that the evidence obtained through execution of the warrant is admissible pursuant to the good-faith exception first established by the Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984).

Pursuant to *Leon*, the exclusionary rule does not bar evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Leon*, 468 U.S. 897, 905 (1984). This good-faith exception does not apply in four situations:

> (1) Where the issuing magistrate was misled by information in an affidavit that the affiant knew was false, or would have known was false except for a reckless disregard for the truth.
>
> (2) Where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police.
>
> (3) Where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.
>
> (4) Where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*Leon*, 468 U.S. at 923; *United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006).

Here, there is no evidence that Magistrate Judge Knowles was misled by false or misleading information in the affidavit or that he "wholly abandoned" his judicial role, and the affidavit clearly was not a "bare bones" affidavit. To the contrary, the affidavit suffered from the opposite problem: it was overly lengthy and packed with a wealth of evidence concerning not just Demetrius Duncan but fourteen other suspects. In that regard, the abundance of information contained in the affidavit to some extent served to mask the fact that it contained relatively little information specifically relating specifically to Demetrius

Duncan or 964 Woody Hills Drive. The affidavit, however, was not devoid of information relating to Duncan, connecting him with the residence in question, and indicating that he was involved with Vance in distributing crack cocaine. In addition, in a hearing in connection with another defendant's motion to suppress evidence obtained pursuant to a different warrant that was supported by the same affidavit, Agent Whitsett testified under oath, in open court, that Judge Knowles was provided with the affidavit "well in advance" of signing the warrants: "Either the day before, late that afternoon, or early the next morning, we gave the affidavits to the judge, and it was later that night when we went and signed the affidavits." (ECF No. 1008, at 72:11–15.) Judge Knowles had ample time to review the lengthy affidavit provided in support of the search warrant, and he did not function as a mere "rubber stamp."

Further, with respect to official reliance on the affidavit, the determination of "good-faith reliance, like a determination of probable cause, must be bound by the four corners of the affidavit." *Hython*, 443 F.3d at 487; *United States v. Laughton*, 409 F.3d 744, 751 (6th Cir. 2005). The "relevant question is whether the officer reasonably believed that the warrant was properly issued, not whether probable cause in fact existed." *Hython*, 443 F.3d at 487; *Laughton*, 409 F.3d at 752. The good-faith test is an objective one, that "prevents reviewing courts from delving into an analysis of the subjective knowledge of affiants." *Hython*, 443 F.3d at 487; *Laughton*, 409 F.3d at 752. The determination of objective reasonableness "inquires 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision.'" *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008); *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003) (both quoting *Leon*, 486 U.S. at 923 n.23).

The Sixth Circuit has recognized that the third and fourth *Leon* exceptions can be overcome with a "modicum of evidence, however slight, to connect the criminal activity described in the affidavit to the place to be searched." *Laughton*, 409 F.3d at 749. However, the Sixth Circuit has found that the exception does not apply when the search warrant affidavit (1) does not establish any nexus between illegal activity and the place to be searched, *id.* at 751; (2) absolutely fails to establish probable cause, *Helton*, 314 F.3d at 821-23; or (3) relies on clearly stale information. *Hython*, 443 F.3d at 487–88.

In the present case, none of the none of the *Hython* factors is present: There was clearly a nexus between Duncan and illegal activity and between Duncan and the place to be searched; probable cause was not completely lacking; and the information was not so stale as to alert a well trained officer to a

problem with the warrant.

Accordingly, the Court finds that, even if the warrant were found not to be supported by probable cause, the *Leon* good-faith exception would nonetheless render the fruits of the search admissible at trial.

**CONCLUSION**

For the reasons set forth herein, defendant Demetrius Duncan's motion to exclude evidence obtained from the search of 964 Woody Hills Drive (ECF No. 861) is denied.

It is so **ORDERED**.

Thomas A. Wiseman, Jr.
Senior United States District Judge